UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENARD PETERSON,

    Petitioner,

                                         Case No. 2:12-cv-11109

v.

                                         Honorable Patrick J. Duggan

PAUL KLEE,

    Respondent.

_____/

## **OPINION AND ORDER DENYING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

    Petitioner Denard Peterson ("Petitioner"), a Michigan state prisoner in the custody of the Michigan Department of Corrections, has filed a petition for writ of habeas corpus challenging his plea-based conviction of criminal sexual conduct in the first degree. On May 31, 2001, Petitioner was sentenced to twenty-three years and nine months to forty years of imprisonment. Respondent Paul Klee ("Respondent") has moved for summary judgment, arguing that the petition should be dismissed as barred by the statute of limitations. The Court finds that lingering questions of fact regarding whether equitable tolling is appropriate under the facts of this case preclude the entry of summary judgment. The Court therefore denies Respondent's Motion for Summary Judgment. The Court will issue a separate Order appointing counsel to assist Petitioner in the resolution of the equitable tolling issue.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's plea-based conviction arose from the October 2000 rape of a 73-year-old woman in her house. Initially charged with criminal sexual conduct in the first degree, home invasion in the first degree, and habitual offender in the second degree,[1] *see* Wayne County docket, Case No. 01-001261-01-FH, Petitioner pleaded no contest to criminal sexual conduct in the first degree on May 16, 2001. On February 9, 2001, prior to the plea hearing, Petitioner underwent a court-ordered competency evaluation, apparently in response to a notice of insanity defense. A competency hearing was held on March 16, 2001 at which Petitioner was found competent to stand trial.

Statements made on the record during Petitioner's plea hearing by Petitioner's counsel Robert Slameka indicate that the plea was given in agreement for dismissal of the home invasion and habitual offender charges. At the plea hearing, counsel stated the reason for the no contest plea:

> MR. SLAMEKA: Judge, today is a special, special pretrial, and the prosecution has been so nice that they are going to dismiss the home invasion and the habitual if my client would plead nolo contendere to C.S.C. in the first degree. And the basis for asking for nolo contendere is

---

[1] At the January 23, 2001 preliminary examination, the complaining witness Mary Jane Hock testified as to the events that transpired on October 16, 2000. (ECF No. 11-1.) Hock testified that as she was entering her house, Petitioner approached her from behind, forced her inside by punching her arms and head, and stated "I'm going to rape you, I'm going to kill you, I'm going to make love to you." Petitioner then forced her into the bedroom and raped her. Afterwards, Petitioner went through Hock's house removing personal property, including the victim's wallet, before departing. *See People v. Peterson*, No. 01-1261 (Wayne Co. Cir. Ct. Jan. 23, 2001) (Prelim. Ex. Tr. at 4-9) (ECF No. 11-2).

>two; one, potential civil liability. And, secondly, because time has elapsed since this incident my client can't recall exactly what happened.

(Plea Tr. at 3, ECF No. 11-3.) On May 31, 2001, the court sentenced Petitioner to term of twenty-three years and nine months to forty years of imprisonment.[2]

Petitioner planned to appeal the conviction, seeking to withdraw his plea. As such, the court appointed appellate counsel, Joseph Evanski, to represent Petitioner on appeal. James Hall, an associate of Evanski, interviewed Petitioner at the Riverside Correctional Facility in Ionia, Michigan. As a result of this interview, Evanski filed a motion to have Petitioner's competency evaluated for purposes of determining whether Petitioner was competent to assist his counsel in his appeal on June 26, 2002. The motion contended that during the meeting with Hall, Petitioner appeared incompetent to either understand the ramifications of seeking to withdraw his guilty plea or assist appellate counsel in pursuing the appeal. Of particular concern was Hall's belief that Petitioner was not capable of understanding that he risked consecutive sentences if convicted of both criminal sexual conduct and home invasion.

The trial court granted appellate counsel's motion on November 10, 2002. Dr. Jennifer Balay evaluated Petitioner and issued a report dated January 28, 2003. Dr. Balay's report noted that Petitioner was a chronically mentally ill man who suffered from paranoid schizophrenia and further opined that Petitioner was currently psychotic. (*See*

---

[2] The Court notes that a review of the sentencing transcript raises questions about Petitioner's competency at sentencing. (*See* Sent'g Tr. at 8-12, ECF No. 11-4.)

1/28/03 Letter, ECF No. 11-9.) Dr. Balay's report indicated that it would be difficult for Petitioner at that time to "carry out any kind of coherent and rational conversation with his attorney as he considers his various legal options." (*Id.*)

Equipped with Dr. Balay's findings, Evanski filed a motion to have Petitioner committed for psychiatric treatment in February 2003. In that motion, Evanski asked the court to order Petitioner committed for treatment to render him competent to proceed in the appeal or, in the alternative, to provide counsel with guidance on how to proceed in the matter. (*See* Mot. to Have Appellant Committed for Psychiatric Treatment (Attach. as Ex. 3 to Pet.'s Mot. Relief J.) (ECF No. 11-5, Pg. ID 119-126).) On April 1, 2003, the trial court issued an order dismissing Petitioner's appeal. *See* Order to Dismiss Appeal, *People v. Peterson*, No. 01-1261 (Wayne Cir. Ct. Apr. 1, 2003) (Attach. as Ex. 4 to Pet.'s Mot. Relief J.) (ECF No. 11-5, Pg. ID 132). The order reads as follows:

> The Appellant having been evaluated at the Forensic Center and because the opinion of the examiner was that Appellant was psychotic and very likely not competent to understand and appreciate the possible dire ramifications associated with withdrawing the plea of guilty;
>
> It is therefore Ordered that this appeal be dismissed subject to the Appellant's right to seek review pursuant to MCR 6.500 should he regain his competence.

(*Id.* (emphasis deleted).)

4

On November 3, 2005, Petitioner filed a *pro se* motion for relief from judgment.[3] In this motion, Petitioner raised four challenges to his conviction and sentence: (1) denial of right to appeal his conviction and withdraw his plea with the assistance of appellate counsel; (2) plea was invalid due to incompetency; (3) actual innocence; and (4) sentence based on inaccurate guideline scores.

The trial court denied Petitioner's motion for relief from judgment in an opinion and order dated December 20, 2005.  The court found that Petitioner's appellate attorney acted appropriately when he asked the court for guidance regarding Petitioner's ability to communicate and grasp the legal issues surrounding his appeal. The trial court did not address the question of whether Petitioner had regained his competence since the 2003 adjudication of incompetency because, in the court's opinion, Petitioner was entitled to appellate review of his conviction regardless of his competency.  The court then addressed the merits of Petitioner's remaining claims and rejected them.  *See People v. Peterson*, No. 01-1261 (Dec. 20, 2005 Op. & Order) (ECF No. 11-6).

Petitioner then filed a *pro se* appeal, which the Michigan Court of Appeals dismissed on September 15, 2006 for failure to pursue the case in conformity with the Michigan rules.  The order of dismissal specifically cited non-compliance with Mich. Ct. R. 7.201(B)(3)[4] and R. 7.216(A)(10)[5], and indicated that dismissal was without prejudice

---

[3] Nothing in the record suggests that Petitioner had "regain[ed] his competence" at the time he filed his November 3, 2005 motion.

[4] This rule provides:

5

to whatever other relief may be available consistent with the court rules. *See People v. Peterson*, No. 270841 (Mich. App. Sept. 15, 2006) (ECF No. 11-7). Petitioner did not seek leave to appeal from the Michigan Supreme Court.

On February 8, 2010, Petitioner filed a motion seeking discovery of DNA test evidence and an order for DNA testing. This motion was denied by the trial court on February 19, 2010 because Petitioner failed to satisfy the requirements of DNA testing under Michigan law. In July 2011, Petitioner filed yet another motion seeking discovery, which was predictably denied by the trial court. In denying this motion, the court explained that Petitioner had exhausted his appellate rights and therefore had no right to receive further discovery or documents for purposes of appeal.

Petitioner's writ for habeas corpus was filed with this Court on March 13, 2012.

---

If a case is accepted for filing without all of the required documents, transcripts, or fees, the appellant, or the plaintiff in an original action under MCR 7.206 [which, includes habeas petitions], must supply the missing items within 21 days after the clerk's notice of deficiency. The chief judge or another designated judge may dismiss the appeal and assess costs if the deficiency is not remedied within that time.

Mich. Ct. R. 7.201(B)(3).

[5] This rule provides:

The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just ... dismiss an appeal or an original proceeding for lack of jurisdiction or failure of the appellant or the plaintiff to pursue the case in conformity with the rules.

Mich. Ct. R. 7.216(A)(10).

## II.     ANALYSIS

Respondent contends that Petitioner's habeas petition is untimely and that summary judgment is therefore appropriate as a matter of law. After a careful and searching review of the record before it, however, the Court concludes that evidentiary gaps in the record preclude the granting of summary judgment at this time. Specifically, the Court finds that the record raises questions of whether Petitioner is entitled to invoke the doctrine of equitable tolling. The Court first discusses AEDPA's statute of limitations and then proceeds to analyze the potential propriety of equitable tolling.

### A.     Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, provides a one-year period of limitation for habeas petitions filed by state prisoners seeking relief from state court judgments. 28 U.S.C. § 2244(d)(1). The limitations period runs from one of four specified dates, usually – and this case is no exception – from the date on which the judgment became final by the conclusion of direct review or when the time for seeking such review has expired. 28 U.S.C. § 2244(d)(1)(A); *see also Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 685 (2009) (explaining that for purposes of § 2244(d)(1)(A), direct review concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted). Notably, this limitations period is tolled during any time in which "a properly filed application for State post-conviction or other collateral review . . . is pending[.]" 28 U.S.C. § 2244(d)(2).

Respondent first contends that the applicable date in this case is the date on which Petitioner's conviction became final by conclusion of the time for seeking direct review of his motion for relief from judgment. According to Respondent, Petitioner's conviction became final on November 10, 2006 and that the corresponding AEDPA limitations period expired on Monday, November 12, 2007. In reaching this conclusion, Respondent provides the following rationale. The Michigan Court of Appeals dismissed Petitioner's appeal of the lower court's denial of his motion for relief from judgment on September 15, 2005. Pursuant to Michigan Court Rule 7.302(C)(2), Petitioner had fifty-six days to file an application for leave to appeal with the Michigan Supreme Court. Petitioner did not file any such application with the Michigan Supreme Court and as such, Petitioner's conviction became final on November 10, 2006 as this is the date on which the fifty-six day period lapsed. Because Petitioner's conviction became final on November 10, 2006, the one-year AEDPA limitations period expired no later than Monday, November 12, 2007. Alternatively, Respondent suggests that Petitioner's conviction became final much earlier. Under this alternative theory, the conviction became final upon the expiration of the time for appealing the state court's April 1, 2003 dismissal of Petitioner's direct appeal. Respondent notes that irrespective of which theory is the correct one, Petitioner has failed to comply with the statute of limitations set forth in the AEDPA and the Court should therefore enter an order granting summary judgment in Respondent's favor.

The question of when the limitations period expired in this case is complicated. The AEDPA provides that in most cases the habeas limitations period runs from the

8

conclusion of direct review or when the time for seeking such review has concluded. 28 U.S.C. 2244(d)(1)(A). At the time of Petitioner's conviction, a criminal defendant in Michigan had one year from the time he was appointed counsel to appeal a conviction. See former Mich. Ct. R. 7.205(F)(4)(a). Although Petitioner was appointed an appellate attorney, the trial court dismissed the appeal upon a finding that petitioner was incompetent. This dismissal precluded Petitioner from pursuing an appeal during the one-year period prescribed by state law. When a petitioner forgoes a state-court appeal, the limitations period is triggered by state court rules that limit the time for seeking review by the state appellate court. *See Gonzalez v. Thaler,* __ U.S. __, 132 S. Ct. 641, 655-56 (2012). It is unclear how Michigan law applies to foreclose an appeal by a convicted defendant whose appeal was dismissed because he was found incompetent to appeal and who later filed a motion for post-judgment relief without any explicit finding of competency.

Despite these complicated questions of law and procedure, the Court finds that it need not, at this time, reach the question of when, or even if, the AEDPA limitations period commenced. This is because even if the Court accepts Respondent's argument that the statutory limitations period expired, the record raises the issue of whether equitable tolling applies.

**B.     Equitable Tolling**

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 560 U.S. __, 130 S. Ct. 2549, 2560 (2010). A petitioner is

9

entitled to equitable tolling only if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005)). A petitioner may also be eligible for equitable tolling if he demonstrates a credible claim of actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice. *McQuiggin v. Perkins,* No. 12-126, 2013 U.S. LEXIS 4068 (S. Ct. May 28, 2013); *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). Because equitable tolling is used "sparingly" by the federal courts, the party seeking to toll the limitations period bears the burden of proving an entitlement to it. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) (citation omitted).

Petitioner has not filed a motion for equitable tolling, but has responded to Respondent's summary judgment motion. Petitioner's response is largely illegible, but the parts that are legible appear to assert "I am a mental patient naive to law," "I don't understand how could the statue [sic] of limitations run out," and "I never raped 73-year-old Mary Hock." He also appears to assert that his appeal was dismissed due to his incompetence, that he never spoke with appellate counsel, and that prison legal writers told him that he could not appeal without a pre-sentence report. (ECF Nos. 15, 16.)

### C. Mental Incompetence

"[A] petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that *may* equitably toll AEDPA's one-year statute of limitations." *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (emphasis added). Thus, "mental incompetence is not a *per se* reason to toll a statute of limitations." *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008). "To obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Ata*, 662 F.3d at 742.

Based on the record before the Court, it appears that Petitioner has suffered from a serious mental illness for at least some period of time during his imprisonment. What is not clear, however, is whether Petitioner's mental illness prevented him from timely filing his habeas petition. The Court is unable to make such a determination on the record before it.

In *Ata v. Scutt*, the Sixth Circuit addressed the question of when a district court is permitted, or required, to hold an evidentiary hearing on the question of whether a petitioner's claim of mental incompetence warrants equitable tolling of the AEDPA limitations period. The court explained that "an evidentiary hearing is required when sufficiently specific allegations would entitle the petitioner to equitable tolling on the basis of mental incompetence which caused the failure to timely file." *Ata*, 662 F.3d at

742. The court further noted that, where the petitioner has not met this standard, the question of whether to hold an evidentiary hearing lies within the discretion of the district court. *Id.* The court went on to hold that the district court had committed reversible error when it granted summary judgment to the state on statute of limitations grounds without holding an evidentiary hearing when the petitioner had made sufficiently specific allegations that mental incompetence prevented timely filing, and where such allegations were consistent with the record. *Id.* at 743-45. The case was remanded to the district court with instructions to hold an evidentiary hearing on the question of whether equitable tolling was appropriate. *Id.* at 745.

On this record, the Court may not grant summary judgment to Respondent without an evidentiary hearing. Petitioner has responded to the motion for summary judgment by asserting that he is mentally ill. This allegation is consistent with the record, under which the last adjudication of Petitioner's competency, in 2003, was that he was incompetent to proceed with his appeal. The record contains no subsequent ruling by the Michigan courts that Petitioner was competent, and no clear evidence that Petitioner has regained his competency in the intervening years. Respondent's motion for summary judgment on statute of limitations grounds is therefore denied.

### III.  APPOINTMENT OF COUNSEL

There is no constitutional right to the appointment of counsel in a habeas proceeding. *See Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987) ("[O]ur cases establish that the right to appointed counsel extends to the first appeal of

right, and no further."); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (explaining that "a petitioner does not have a right to assistance of counsel on a habeas appeal") (*citing McCleskey v. Zant*, 499 U.S. 467, 495, 111 S. Ct. 1454, 1470 (1987)). However, appointment of counsel is mandatory if the district court determines that an evidentiary hearing is required. *See* Fed. R. 8(c), Rules Governing § 2254 Cases in the U.S. District Courts. An indigent habeas petitioner may also obtain representation at any stage of the case "[w]henever the United States magistrate or the court determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B).

Having found that an evidentiary hearing is necessary on the question of whether equitable tolling applies, the Court must appoint counsel and further believes that the interest of justice will be served by such. Following the appointment of counsel and an opportunity for counsel to review the record, the Court will order an evidentiary hearing on the issue of whether equitable tolling is appropriate.

## IV. CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that Respondent is not entitled to summary judgment at this time. The Court will issue a separate order appointing counsel for Petitioner and will thereafter schedule an evidentiary hearing.

Accordingly,

**IT IS ORDERED** that Respondent's Motion for Summary Judgment, (ECF No. 13), is **DENIED**.

Date:  June 10, 2013

                                              <u>s/PATRICK J. DUGGAN</u>
                                              UNITED STATES DISTRICT JUDGE

Copies to:

**Denard Peterson**, # 347506
Woodland Center Correctional Facility
9036 E M-36
Whitmore Lake, MI 48189

**Anica Letica, A.A.G.**
**Mark G. Sands, A.A.G**