UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENARD PETERSON,

    Petitioner,

                                                          Case No. 2:12-cv-11109

v.

                                                          Honorable Patrick J. Duggan

PAUL KLEE,

    Respondent.
_____/

**<u>OPINION AND ORDER (1) GRANTING PETITIONER'S REQUEST TO EQUITABLY TOLL THE LIMITATIONS PERIOD AND (2) DIRECTING RESPONDENT TO FILE ANY SUPPLEMENTAL STATE COURT RECORD AND A RESPONSIVE PLEADING</u>**

      On March 7, 2012 Petitioner Denard Peterson ("Petitioner"), a state prisoner in the custody of the Michigan Department of Corrections ("MDOC"), filed a petition for writ of habeas corpus challenging his 2001 plea-based conviction of criminal sexual conduct in the first degree. Respondent Paul Klee ("Respondent") moved for summary judgment on September 18, 2012, arguing that the petition should be dismissed as barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). In an Opinion and Order dated June 10, 2013, this Court denied Respondent's motion. *Peterson v. Klee*, No. 12-11109, 2013 U.S. Dist. LEXIS 80954, at *15-16 (E.D. Mich. June 10, 2013) (unpublished). Specifically, the Court determined that lingering questions of fact relating to Petitioner's mental

health and the effect of his mental illness on his ability to comply with the pertinent statute of limitations required further development and thus precluded the entry of summary judgment. *Id.* In effort to resolve these issues, the Court ordered an evidentiary hearing pursuant to *Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011) and further appointed counsel for Petitioner in accordance with Rule 8(c) of the Federal Rules Governing § 2254 Cases in the United States District Courts. *Id.* at *17-18.

On May 20, 2014, this Court held an evidentiary hearing on the issue of Petitioner's mental illness and its effect on his ability to comply with the statutory limitations period. At this hearing, Petitioner's counsel presented the expert testimony of Jeffrey Wendt, Ph.D. Respondent did not present an expert but did thoroughly cross-examine Dr. Wendt. With the benefit of Dr. Wendt's testimony and equipped with his written report, this Court is prepared to issue a ruling regarding whether Petitioner's habeas petition should be deemed timely filed pursuant to the doctrine of equitable tolling. For the reasons stated herein, the Court believes that the unique factual circumstances present in this case warrant the application tolling, thus rendering Petitioner's application for writ of habeas corpus timely filed.

## I.     FACTUAL AND PROCEDURAL BACKGROUND [1]

Petitioner's plea-based conviction arose from the October 2000 rape of an elderly woman in her house. On February 9, 2001, prior to the plea hearing, the state trial court ordered a competency evaluation, apparently in response to a notice of insanity defense. (ECF No. 11-9 Pg ID 340-41.) A competency hearing was held on March 16, 2001, at which time Petitioner was found competent to stand trial. (ECF No. 11-1 Pg ID 35.)

Initially charged with criminal sexual conduct in the first degree, home invasion in the first degree, and habitual offender in the second degree, Petitioner pleaded no contest to criminal sexual conduct in the first degree on May 16, 2001. (*Id.*) Statements made on the record during the plea hearing by Petitioner's counsel indicate that the plea was given in agreement for dismissal of the home invasion and habitual offender charges. (ECF No. 11-3 Pg ID 51.)

On May 31, 2001, the court sentenced Petitioner to term of twenty-three years and nine months to forty years of imprisonment. The Court notes that a review of the sentencing transcript raises questions about Petitioner's competency at sentencing. (ECF No. 11-4 Pg ID 68-72.) Statements made by Petitioner during

---

[1] The Court's June 10, 2013 Opinion and Order addresses the underlying state conviction in greater detail and the Court need not rehash all of those facts herein. *Peterson v. Klee*, No. 12-11109, 2013 U.S. Dist. LEXIS 80954 (E.D. Mich. June 10, 2013) (unpublished). For purposes of this Opinion and Order, the Court directs its attention to the portions of the record, including the May 20, 2014 evidentiary hearing, bearing on Petitioner's competence.

his allocution are properly categorized as rambling, incoherent, nonresponsive, and delusional. (*Id.*)

Petitioner planned to appeal the conviction, seeking to withdraw his plea. As such, the court appointed appellate counsel, Joseph Evanski, to represent Petitioner on appeal. James Hall, an associate of Mr. Evanski, interviewed Petitioner at the Riverside Correctional Facility in Ionia, Michigan on June 12, 2002. On June 26, 2002, and as a result of the aforementioned interview, Mr. Evanski filed a motion to have Petitioner's competency evaluated for purposes of determining whether Petitioner was competent to assist his counsel on appeal. (ECF No. 11-9 Pg ID 241-47.) The motion contended that during the meeting with Mr. Hall, Petitioner appeared incompetent to either understand the ramifications of seeking to withdraw his guilty plea or to assist appellate counsel in pursuing the appeal. Of particular concern was Mr. Hall's belief that Petitioner was not capable of understanding that he risked consecutive sentences if convicted of both criminal sexual conduct and home invasion and that, if convicted, the habitual offender charge would result in the imposition of a longer sentence than he had already received.

The trial court granted appellate counsel's motion on November 10, 2002, and Petitioner was subsequently evaluated by Jennifer Balay, Ph.D. in late January 2003. Dr. Balay issued a report in which she determined that Petitioner was

4

incompetent to assist with his appeal. The report noted that Petitioner was a chronically mentally ill man who suffered from paranoid schizophrenia and further opined that Petitioner was currently psychotic. (ECF No. 11-9 Pg ID 354-357.) Dr. Balay's report indicated that it would be difficult for Petitioner at that time to "carry out any kind of coherent and rational conversation with his attorney as he considers his various legal options[.]" (*Id.* at 357.)

Equipped with Dr. Balay's findings, Mr. Evanski filed a motion to have Petitioner committed for psychiatric treatment in February 2003. In that motion, Mr. Evanski asked the court to order Petitioner committed for treatment to render him competent to proceed in the appeal or, in the alternative, to provide counsel with guidance on how to proceed in the matter. (ECF No. 11-5, Pg ID 119-126.) On April 1, 2003, the chief judge of the state trial court issued an order dismissing Petitioner's appeal. (ECF No. 11-5, Pg ID 132). The order reads as follows:

> The Appellant having been evaluated at the Forensic Center and because the opinion of the examiner was that Appellant was psychotic and very likely not competent to understand and appreciate the possible dire ramifications associated with withdrawing the plea of guilty;
>
> It is therefore Ordered that this appeal be dismissed subject to the Appellant's right to seek review pursuant to MCR 6.500 should he regain his competence.

(*Id*. (emphasis removed).)

5

Over two years later, on November 3, 2005, Petitioner filed a *pro se* motion for relief from judgment.[2] In this motion, Petitioner raised four challenges to his conviction and sentence, including the denial of his right to appeal his conviction and withdraw his plea with the assistance of appellate counsel. The trial court denied Petitioner's motion in an opinion and order dated December 20, 2005.[3] The court found that Petitioner's appellate attorney acted appropriately when he asked the court for guidance regarding Petitioner's ability to communicate and grasp the legal issues surrounding his appeal. The trial court did not address the question of whether Petitioner had regained his competence since the 2003 adjudication of incompetency because, in the court's opinion, Petitioner was entitled to appellate review of his conviction regardless of his competency. The court then addressed the merits of Petitioner's remaining claims and rejected them. *People v. Peterson*, No. 01-1261 (Dec. 20, 2005 Op. & Order) (ECF No. 11-6 Pg ID 133-143).

Petitioner then filed a *pro se* appeal, which the Michigan Court of Appeals dismissed on September 15, 2006 for failure to pursue the case in conformity with the court rules. The order of dismissal indicated that dismissal was without

---

[2] Nothing in the record suggests that Petitioner had regained his competence at the time he filed his November 3, 2005 motion.

[3] The Rule 5 materials also include an identical opinion and order from the state court denying Petitioner's motion for relief from judgment dated January 31, 2006. (*See* ECF No. 11-7 Pg ID 145-155.)

prejudice to whatever other relief may be available consistent with the court rules. *People v. Peterson*, No. 270841 (Mich. Ct. App. Sept. 15, 2006) (ECF No. 11-7 Pg ID 144). Petitioner did not seek leave to appeal from the Michigan Supreme Court. (ECF No. 11-8 Pg ID 214.)

On February 8, 2010, Petitioner filed a motion seeking discovery of DNA test evidence and an order for DNA testing. This motion was denied by the trial court on February 19, 2010 because Petitioner did not satisfy the requirements of DNA testing under Michigan law. (ECF No. 11-9 Pg ID 220-221.)

In July 2011, Petitioner filed a motion seeking discovery of exculpatory evidence and once again seeking DNA testing, which was predictably denied by the trial court. In denying this motion, the court explained that Petitioner had exhausted his appellate rights and therefore had no right to receive further discovery or documents for purposes of appeal. (ECF No. 11-9 Pg ID 215.)

Petitioner's writ for habeas corpus was filed with this Court on March 7, 2012.[4] (ECF No. 1.) On September 18, 2012, Respondent filed a motion for

---

[4] Under the prison mailbox rule, a federal habeas petition is deemed filed when the prisoner gives his petition to prison officials for mailing to the federal courts. *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 n.2 (E.D. Mich. 1999). Absent evidence to the contrary, federal courts employ a presumption that a prisoner gives his habeas petition to prison officials on the date the petition is signed. *Id.*; *see also Rhodes v. Senkowski*, 82 F. Supp. 2d 160, 165 (S.D.N.Y. 1999) ("A pro se prisoner's papers are considered filed when they are handed over to prison officials for forwarding to the court.") (collecting cases). Although not placed on the Court's docket until March 13, 2012, the Court will assume that Petitioner actually

7

summary judgment seeking dismissal of the habeas petition on the grounds that the petition was not filed within AEDPA's one-year limitations period. (ECF No. 13.) In an Opinion and Order dated June 10, 2013, this Court denied Petitioner's motion. *Peterson*, No. 12-11109, 2013 U.S. Dist. LEXIS 80954. The Court first noted that "[t]he question of when the limitations period expired in this case is complicated." *Id.* at *11. This complication arose from the state court procedural history; as the Court noted, "[i]t is unclear how Michigan law applies to foreclose an appeal by a convicted defendant whose appeal was dismissed because he was found incompetent to appeal and who later filed a motion for post-judgment relief without any explicit finding of competency." *Id.* at *12. The Court then indicated that even if the statutory limitations period had expired, the record before the Court raised the question of whether the limitations period should be equitably tolled on the basis of Petitioner's mental incompetence. *Id.* at *16. The Court appointed counsel and an evidentiary hearing was held on May 20, 2014. At this hearing, Petitioner presented the expert testimony of Dr. Wendt, who opined that Petitioner's mental incompetence precluded him from seeking federal habeas relief in a timely manner.

## II. LEGAL FRAMEWORK

### A. AEDPA's Statute of Limitations

---

filed his habeas petition on March 7, 2012, the date on which he signed and dated the petition. *Neal v. Bock*, 137 F. Supp. 2d 879, 882 n.1 (E.D. Mich. 2001).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, provides a one-year period of limitation for habeas petitions filed by state prisoners seeking relief from state-court judgments. 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the latest of four enumerated events. In seeking summary judgment, Respondent relied on the first of these four events: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A); *see also Jimenez v. Quarterman*, 555 U.S. 113, 119, 129 S. Ct. 681, 685 (2009) (explaining that for purposes of § 2244(d)(1)(A), direct review concludes when the availability of direct appeals to the state courts and to the United States Supreme Court have been exhausted).

Respondent's summary judgment motion argued that Petitioner's conviction became final upon (1) the expiration of the time for appealing the state court's April 1, 2003 dismissal of his direct appeal or (2) on November 10, 2006, the date on which the time for seeking direct review of the trial court's denial of his motion for relief from judgment expired. Respondent appears to have abandoned its first suggestion, as at the evidentiary hearing, Respondent indicated that Petitioner's conviction became final sometime between 2006 and 2012.[5]

---

[5] Later during the evidentiary hearing, Respondent took a different position by stating that Petitioner's application for writ of habeas corpus was filed four years late. Insofar as the petition was filed in March of 2012, this line of

9

As an initial matter, the Court notes that Respondent's contention regarding the timeframe during which Petitioner's conviction became final within the meaning of AEDPA is problematic in that if Petitioner's conviction became final on March 6, 2011 or later – a possibility Respondent suggested at the evidentiary hearing – Petitioner's March 7, 2012 habeas application was timely filed and the Court would have no occasion to entertain arguments regarding equitable tolling. On the other hand, if Petitioner's conviction became final sometime before that, the Court must determine whether equitable tolling is proper.

**B.   Equitable Tolling of AEDPA's Statute of Limitations**

The AEDPA's one-year statute of limitations is not jurisdictional in nature and is therefore "subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. __, 130 S. Ct. 2549, 2560 (2010) ("Now, like all 11 Courts of Appeals that have considered the question, we hold that § 2244(d) is subject to equitable tolling in appropriate cases."). A petitioner is entitled to equitable tolling only upon a showing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented

---

argumentation presupposes that Petitioner's conviction became final in 2007 and that the one-year limitations period expired in 2008.

timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005)).[6]

The United States Court of Appeals for the Sixth Circuit "ha[s] indicated that equitable tolling should be applied 'sparingly,' *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006), and decided on a 'case-by-case basis,' *Keenan v. Bagley*, 400 F.3d 417, 421 (6th Cir. 2005)." *Ata*, 662 F.3d at 741 (footnote omitted); *see also Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000) ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.") (citation omitted). The party seeking to toll the limitations period bears the burden of demonstrating an entitlement to it. *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).

### C. Mental Incompetence as a Basis for Equitable Tolling

A habeas petitioner's "mental incompetence is not a *per se* reason to toll a statute of limitations." *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008). Rather, "a petitioner's mental incompetence, which prevents the timely filing of a habeas petition, is an extraordinary circumstance that *may* equitably toll AEDPA's one-year statute of limitations." *Ata*, 662 F.3d at 742 (emphasis added). "To

---

[6] A petitioner may also be eligible for equitable tolling if he demonstrates a credible claim of actual innocence, so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice. *McQuiggin v. Perkins,* No. 12-126, __ U.S. __, 133 S. Ct. 1924 (2013); *Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005).

11

obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Id.*

### III. APPLICATION

**A. Is Petitioner Mentally Incompetent?**

The parties do not dispute that Petitioner suffers from mental illness; they do, however, dispute the extent of his mental illness and whether his mental illness has consistently amounted to mental incompetence. Although the last formal adjudication of Petitioner's competency, which occurred in 2003, determined that Petitioner was incompetent to proceed with his direct appeal, Respondent explains that competence is fluid and can change over time. This suggestion forms Respondent's main rebuttal to the fact that the record contains no subsequent ruling by the Michigan courts that Petitioner regained his competence and no clear evidence that Petitioner regained his competency in the intervening years.

As support for this argument, Respondent points to MDOC treatment records allegedly tending to indicate periods of lucidity. Specifically, Respondent contends that from approximately February through November of 2010 (a nine-month period) and again from June through at least October 24, 2011 (a period of approximately four-and-a-half months), Petitioner was described as doing

12

"relatively" well.[7] Thus, while Petitioner has suffered from mental illness during the entirety of his incarceration, he has not, according to Respondent, been mentally incompetent for the entire duration.

Respondent's position, although not without some record support, is not, in this Court's view, a tenable one. As Dr. Balay noted in evaluating Petitioner upon appellate counsel's request in late January 2003, "it appears from information in his Forensic Center records, that there are times when [Petitioner] shows some degree of partial remission from [his] symptoms, although he is apparently never totally free of symptoms of mental illness." (Expert Report 8.) MDOC treatment records dated November 23, 2003 indicate that Petitioner's "mental status is stable . . . When one talks with inmate for extended periods of time it becomes evident that he continues to harbor delusions and bizarre thoughts . . . On a superficial and daily basis he is psychiatrically stable." (*Id.*) MDOC treatment records noted on July 21, 2004 that Petitioner "is relatively mentally stable -- takes his medication routinely and attends most of his groups. He is chronically mentally ill and experiences odd and bizarre thinking routinely." (*Id.*) In the same treatment record, Petitioner's speech was described as "rambling and difficult to understand." (*Id.*) Characterizations of mental stability appear to be few and far

---

[7] The Court notes that Respondent did not introduce any of the treatment records upon which the state relies into evidence but rather referenced them during the cross-examination of Dr. Wendt.

13

between. As Dr. Wendt noted in his report and reiterated at the evidentiary hearing, a March 17, 2011 MDOC treatment record appears to be a fitting summation of Petitioner's mental state: "Generally patient is marginal even when at his best." (*Id.* at 9.)

In reaching his opinions, Dr. Wendt reviewed treatment records dating back to 1981, the time it appears Petitioner was first diagnosed as a paranoid schizophrenic.[8] A summary of this review reveals a picture of a chronically mentally ill man who "[d]emonstrate[s] paranoid and grandiose delusions." (Expert Report 2.) Dr. Wendt's report provides:

> [Petitioner] has consistently exhibited symptoms of formal thought disorder, and his psychosis was primarily characterized by disorganized thought and speech as well as long-standing paranoid delusions and delusions of reference. These symptoms have persisted during periods of treatment with antipsychotic medication.

(*Id.* at 10.) Although there are records describing Petitioner as doing "relatively" well, Dr. Wendt underscored, and this court agrees, that the word "relatively" is of great import and must be read in the context of Petitioner's pronounced mental illness.

After reviewing voluminous treatment records and interviewing Petitioner, Dr. Wendt concludes that "There is no information available to this examiner to suggest that [Petitioner] has experienced full remission of his mental illness at any

---

[8] The first referenced record,ced February 24, 1981, noted that Petitioner "has had repeated hospitalizations since January 1977." (Expert Report 6.)

time during his imprisonment." (*Id.* at 13.) The Court concurs with this conclusion.

### B.   Did Petitioner's Mental Incompetence Cause His Failure to Comply with AEDPA's Statute of Limitations?

Even though this Court believes that Petitioner has sufficiently demonstrated mental incompetence, this alone "is insufficient to toll the statute of limitations." *Ata*, 662 F.3d at 742. "Rather, a causal link between the mental condition and untimely filing is required." *Id.* (citing *McSwain*, 287 F. App'x at 456).

Respondent contends that even if this Court finds that Petitioner is and has been mentally incompetent, Petitioner's mental incompetence did not impact his ability to file his federal habeas petition in a timely manner. Respondent relies on the fact that Petitioner filed several motions in the state courts and managed to file an MDOC grievance and exhaust his administrative remedies (which is a three-step process) prior to filing a lawsuit in federal court during the periods Petitioner was described as doing "relatively well."

In February 2010, Petitioner filed, and the state trial court denied, a motion for production of DNA evidence. (ECF No. 11-9 Pg ID 220.) In July 2011, Petitioner filed a motion for discovery, which the state trial court denied in August of that year. (ECF No. 11-9 Pg ID 215.) Also in 2011, Petitioner filed a prisoner civil rights action for an injury he sustained while incarcerated. *Peterson v. Hall*, No. 11-15154 (E.D. Mich.). At the evidentiary hearing, Respondent contended

that these court filings show that Petitioner's mental condition was not so pronounced as to render him unable to comply with AEDPA's statute of limitations.

Respondent's position is not without legal support. Several courts have held that "[t]he exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity." *Brown v. McKee*, 232 F. Supp. 2d 761, 768 (E.D. Mich. 2002); *see also McSwain*, 287 F. App'x at 457; *Price v. Lewis*, 119 F. App'x 725, 726-27 (6th Cir. 2005) (citing cases); *Saffle v. Smith*, 28 F. App'x 759, 760 (10th Cir. 2001) (citing *Biester v. Midwest Health Servs., Inc.*, 17 F.3d 1264, 1268 (10th Cir. 1996)).[9]

Unlike the cases denying equitable tolling in each of the aforementioned cases, however, this Court finds that Petitioner's other legal filings say very little about the extent and impact of Petitioner's mental incompetence. Further, the Court credits the uncontroverted expert testimony of Dr. Wendt, who opined that Petitioner's incompetence, specifically his tangential thought and speech patterns, would preclude him from having meaningful discussions about his case and how to proceed. The Court reiterates that Petitioner's last formal adjudication of

---

[9] Although not a single one of these cases is binding on this Court, the Court does give them respectful consideration.

16

competency in 2003 determined that he was mentally incompetent. Despite improvement when treated with antipsychotic medications, Petitioner has persistently suffered from delusional beliefs and has continuously demonstrated disorganized and rambling speech, which is suggestive of disorganized thought. The record contains no evidence of a significant change in his mental status since 2003 and, as Dr. Wendt explained at the evidentiary hearing, the treatment Petitioner has been receiving while incarcerated has been aimed at managing Petitioner's illness as opposed to restoring Petitioner's competency. As such, the Court concludes that Petitioner has discharged his burden of demonstrating that his mental incompetence prevented him from timely filing his federal habeas petition.

## IV. CONCLUSION AND ORDER

For the reasons stated herein, the Court concludes that Petitioner has demonstrated that there are extraordinary circumstances in his case that justify the equitable tolling of AEDPA's one-year limitations period, rendering his habeas petition timely filed. Having thoroughly reviewed the record in this case as well as the legal authority relied upon by the parties, the Court believes that the unique factual circumstances warrant this Court's application of the doctrine of equitable tolling.

Accordingly,

**IT IS ORDERED** that Petitioner is entitled to equitable tolling of AEDPA's statutory limitations period due to his mental incompetence and that his habeas petition (ECF No. 1) is therefore timely;

**IT IS FURTHER ORDERED** that Respondent shall file an answer responding to the allegations in Petitioner's application for writ of habeas corpus and shall file any supplemental state court records in accordance with Rule 5 of the Federal Rules Governing § 2254 Cases in the United States District Courts, within **ONE HUNDRED AND TWENTY (120) DAYS** of the date of this Opinion and Order.

Dated: June 25, 2014

                                                s/PATRICK J. DUGGAN
                                                UNITED STATES DISTRICT JUDGE

Copies to:

**Andrew N. Wise, FDO**
**Anica Letica, AAG**
**Cheri L. Bruinsma, AAG**
**Mark G. Sands, AAG**
**Raina I. Korbakis, AAG**