UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENARD PETERSON,

               Petitioner,                      Case No. 2:12-cv-11109

v.

                                       Honorable Patrick J. Duggan

PAUL KLEE,

               Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) GRANTING CERTIFICATE OF APPEALABILITY, (3) GRANTING PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL, AND (4) DENYING PETITIONER'S MOTION FOR BOND AS MOOT

Petitioner Denard Peterson ("Petitioner"), a state prisoner in the custody of the Michigan Department of Corrections, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his pro se application, Petitioner challenges his 2001 plea-based conviction of criminal sexual conduct in the first degree on the following grounds: (1) his trial counsel forced him to accept the terms of the plea agreement and the terms of that agreement were breached; (2) he was erroneously denied relief during state post-conviction review; (3) he was denied his right to appellate review; and (4) his sentence exceeded the state sentencing guidelines without a jury verdict.  Having thoroughly reviewed the claims asserted in the habeas application, the accompanying briefs, and the Rule 5

materials,[1] the Court concludes that Petitioner is not entitled to the issuance of the writ for two independent reasons.  First, Petitioner's claims are barred by the doctrine of procedural default, as Petitioner has failed to demonstrate cause to excuse the default, or that a fundamental miscarriage of justice would result from a failure to review his claims.  Second, and in the alternative, the Court concludes that the state court adjudication of the merits of Petitioner's claims did not violate clearly established federal law as established by the Supreme Court of the United States.  Therefore, the Court will deny the petition.[2]  The Court will, however, grant Petitioner a certificate of appealability and permission to proceed *in forma pauperis* on appeal.

## I.   FACTUAL AND PROCEDURAL HISTORY

Petitioner's plea-based conviction arose from the October 2000 rape of a seventy-three-year-old woman in her house.  Although Petitioner was not immediately arrested in connection with the crime, he eventually turned himself in, after which the victim, Mary Jane Hock, identified Petitioner in a live line-up. In

---

[1] Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, specifically subdivisions (c) and (d), set forth the respondent's obligation to submit state court materials related to the conviction and appeal challenged in a § 2254 proceeding.

[2] Because the Court will deny the habeas petition, the Court will deny Petitioner's request for personal bond on the decision as moot.

January of 2001, after having been advised of his Miranda rights, Petitioner gave a full confession.

Petitioner's preliminary examination took place on January 23, 2001. Hock testified at this hearing, describing the events of October 16, 2000. Hock testified that as she was entering her house, Petitioner approached her from behind, physically assaulted her, forced her inside, and stated, "I'm going to rape you, I'm going to kill you, I'm going to make love to you." Petitioner then dragged Hock into her bedroom and forcibly raped her. Afterwards, Petitioner rifled through Hock's belongings, taking personal property, including her wallet, before departing. At the conclusion of the preliminary examination, the state court bound Petitioner over for trial on charges of first-degree criminal sexual conduct and first-degree home invasion. Having been previously convicted of a crime, Petitioner faced a sentencing enhancement as a second-time habitual offender.

On February 9, 2001, after defense counsel filed a notice that Petitioner would be raising an insanity defense, Petitioner underwent a court-ordered competency evaluation. The forensic examiner opined that, despite evidence of mental illness, Petitioner was competent to stand trial. (ECF No. 36.) A competency hearing was held on March 16, 2001, at which Petitioner was found competent to stand trial.

On May 16, 2001, Petitioner pleaded no contest to one count of first-degree criminal sexual conduct, in violation of Michigan Compiled Laws § 750.520(B)(1)(c), in exchange for dismissal of the home invasion charge and the prosecution's agreement not to proceed with the habitual offender sentencing enhancement.  At the plea hearing, counsel stated the reason for the no contest plea was because of potential civil liability and because Petitioner could not recall the details of the incident.  (Plea Hrg. Tr., ECF No. 11-3.)  Although Petitioner stated at the plea hearing that his attorney told him he would seek placement for Petitioner at a facility where he could receive medication, all of Petitioner's responses during the plea colloquy were appropriate and responsive and did not give rise to concerns regarding his competency at the time of the plea. When asked whether he understood the proceeding and whether he wished to enter the plea, Petitioner repeatedly stated under oath that he understood and that he was guilty.

Two weeks later, on May 31, 2001, the court sentenced Petitioner to a term of twenty-three years and nine months to forty years of imprisonment.  Portions of the sentencing transcript raise questions about Petitioner's competency at sentencing.  Petitioner's allocution amounted to a series of rambling non sequiturs unrelated to the proceedings.  (Sent'g Tr. 8-12, ECF No. 11-4.)

In August 2001, Petitioner filed a notice of application for leave to appeal

-4-

and a request for the appointment of appellate counsel. (ECF No. 11-9, Pg ID 381.) The court granted the request and appointed attorney Joseph Evanski to represent Petitioner on appeal. James Hall, then an associate of Evanski, met with Petitioner at the Riverside Correctional Facility in Ionia, Michigan to discuss his options on appeal, as well as the costs and benefits associated with those options. After this meeting, Evanski filed a motion to have Petitioner's competency evaluated for purposes of determining whether Petitioner was competent to assist counsel on appeal. (ECF No. 11-9, Pg ID 240-47.) Evanski's motion indicated that during the meeting with Hall, Petitioner appeared incompetent to either understand the ramifications of seeking to withdraw his guilty plea or to assist appellate counsel in pursuing the appeal. Of particular concern was Hall's belief that Petitioner was not capable of understanding that he risked consecutive sentences if convicted of both the criminal sexual conduct and home invasion charges. The trial court granted appellate counsel's motion on November 10, 2002, and ordered that Petitioner be evaluated. (ECF No. 11-9, Pg ID 345.)

Dr. Jennifer Balay evaluated Petitioner and issued a report dated January 28, 2003. (ECF No. 11-9, Pg ID 354-57.) Dr. Balay's report noted that Petitioner was a chronically mentally ill man who suffered from paranoid schizophrenia and opined that Petitioner was currently psychotic. Dr. Balay's report indicated that it

would be difficult for Petitioner at that time to "carry out any kind of coherent and rational conversation with his attorney as he considers his various legal options."

Equipped with Dr. Balay's findings, Evanski filed a motion in February 2003 to have Petitioner committed for psychiatric treatment. In that motion, Evanski asked the court to order that Petitioner be committed for treatment to render him competent to proceed in the appeal or, in the alternative, to provide counsel with guidance on how to proceed.

On April 1, 2003, the trial court issued an order dismissing Petitioner's appeal. The order reads as follows:

> The Appellant having been evaluated at the Forensic Center and because the opinion of the examiner was that Appellant was psychotic and very likely not competent to understand and appreciate the possible dire ramifications associated with withdrawing the plea of guilty;
>
> It is therefore Ordered that this appeal be dismissed subject to the Appellant's right to seek review pursuant to MCR 6.500 should he regain his competence.

(ECF No. 11-5, Pg ID 132.)

Over two years later, on November 3, 2005, Petitioner filed a pro se motion for relief from judgment. In this motion, Petitioner raised what essentially formed the four issues raised in the current habeas petition, seeking to invalidate his no contest plea and sentence. The trial court denied the motion for relief from judgment in an opinion and order dated December 20, 2005. The court determined

that Petitioner's appellate attorney acted appropriately when he asked the court for guidance regarding Petitioner's ability to communicate and grasp the legal issues surrounding his appeal. The court indicated that a criminal defendant is allowed to seek post-conviction review once he regains competency. Then, seemingly operating under the assumption that the filing of the motion indicated a restoration of Petitioner's competence, the court, using the lens of de novo review, addressed and rejected the merits of Petitioner's substantive claims.[3]  (ECF No. 11-6.)

Petitioner then attempted to file a pro se application for leave to appeal in the Michigan Court of Appeals, but the application was dismissed without prejudice on September 15, 2006 for failure to pursue the case in conformity with the Michigan Court Rules. The order of dismissal cited non-compliance with Michigan Court Rules 7.201(B)(3) and 7.216(A)(10), which relate to the documents and fee required to initiate the appeal. Petitioner did not seek to correct his deficient filing with the Michigan Court of Appeals, nor did he seek leave to appeal the dismissal in the Michigan Supreme Court.

On February 8, 2010, Petitioner filed a motion seeking discovery of DNA evidence and an order for DNA testing in the state court. This motion was denied

---

[3] Since the 2003 adjudication of incompetence, no state court made any findings concerning Petitioner's competence.

by the trial court on February 19, 2010 because Petitioner failed to satisfy the requirements for seeking DNA testing under Michigan law. (ECF No. 11-9, Pg ID 221 (discussing Michigan Compiled Laws § 770.16).)

In July of 2011, Petitioner filed another motion seeking discovery, which was predictably denied by the trial court. In denying this motion, the court explained that Petitioner had exhausted his appellate rights and therefore had no right to receive further discovery or documents for purposes of appeal. (ECF No. 11-9, Pg ID 215.)

Petitioner filed his writ for habeas corpus on March 7, 2012. On September 18, 2012, Respondent Paul Klee ("Respondent") filed a motion for summary judgment, contending that the petition was untimely pursuant to 28 U.S.C. § 2244(d)(1). In an Opinion and Order dated June 10, 2013, this Court denied Respondent's motion. *Peterson v. Klee*, No. 12-11109, 2013 U.S. Dist. LEXIS 80954, at *15-16 (E.D. Mich. June 10, 2013) (unpublished). This denial was predicated upon the existence of lingering questions of fact relating to Petitioner's mental health and the effect of his mental illness on his ability to comply with the pertinent statute of limitations. The Court believed that these factual questions required further development, thus precluding the entry of summary judgment. In effort to resolve these issues, the Court ordered an evidentiary hearing pursuant to

-8-

*Ata v. Scutt*, 662 F.3d 736 (6th Cir. 2011) and appointed counsel for Petitioner in accordance with Rule 8(c) of the Federal Rules Governing § 2254 Cases in the United States District Courts. *Id.* at *17-18.

An evidentiary hearing was conducted on May 20, 2014. At this hearing, Petitioner presented the expert testimony of Jeffrey Wendt, Ph.D, who opined that Petitioner's mental incompetence precluded him from seeking federal habeas relief in a timely manner. More specifically, Dr. Wendt pointed to Petitioner's delusional beliefs, as well as his tangential thought and speech patterns, explaining that such symptoms would preclude Petitioner from having meaningful discussions about his case and how to proceed. Despite some improvement when treated with anti-psychotic medications, Dr. Wendt indicated that "there is no information available to . . . suggest that [Petitioner] has experienced full remission of his mental illness at any time during his imprisonment." (ECF No. 32, Pg ID 14-15). In other words, according to Dr. Wendt, Petitioner's mental health records contained no evidence of a significant change in Petitioner's mental status since Dr. Balay's 2003 examination finding that Petitioner was not competent to assist with his direct appeal. As Dr. Wendt explained at the evidentiary hearing, Petitioner's treatment during his incarceration has been aimed at managing Petitioner's illness as opposed to restoring Petitioner's competency.

Based on the unrebutted testimony of Dr. Wendt, the Court concluded that Petitioner was entitled to equitable tolling of the limitations period due to his mental incompetence and issued an Opinion and Order to this effect on June 25, 2014.

Respondent then answered the petition.  Respondent asserts in its answer that Petitioner's claims are procedurally barred from review because he failed to exhaust them in the state courts and he no longer has a procedure available to satisfy the exhaustion requirement.  Respondent also contends that Petitioner's claims are without merit. Petitioner's appointed counsel filed a reply brief, asserting that any procedural default should be excused due to Petitioner's mental incompetence. The reply also addresses Petitioner's claim that he was denied his right to an appeal in the state courts.

On January 20, 2015, after Petitioner's reply was filed, Petitioner submitted a request for bond or decision.  (ECF No. 40.)  Petitioner, through counsel, filed a motion for discovery on April 29, 2015.  (ECF No. 43.)  On June 29, 2015, Petitioner withdrew the discovery motion.  (ECF No. 45.)

## II.   DISCUSSION

The unique procedural occurrences in this case counsel in favor of addressing both the issue of whether Petitioner procedurally defaulted his claims

-10-

and the merits of those claims.  It is to these subjects which the Court now turns.

## A.     Procedural Default

### 1.     *Applicable Law*

Respondent contends that review of Petitioner's claims is barred by the

doctrine of procedural default.  Pursuant to this doctrine, "a federal court will not

review the merits of claims, including constitutional claims, that a state court

declined to hear because the prisoner failed to abide by a state procedural rule."

*Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309, 1316 (2012).

Procedural default relates to the exhaustion requirement, which provides that

"[a] federal court will not address a habeas petitioner's federal constitutional claim

unless the petitioner has first fairly presented the claim to the state courts."  *Deitz*

*v. Money*, 391 F.3d 804, 808 (6th Cir. 2004).  In other words, state prisoners are

required to exhaust their claims in the state courts before filing a petition for a writ

of habeas corpus under 28 U.S.C. §2254.  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845, 119 S. Ct. 1728, 1732 (1999) ("[S]tate prisoners must give the state courts one

full fair opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process[.]"); *Rust v. Zent*, 17 F.3d

155, 160 (6th Cir. 1994).  In order to properly exhaust a claim in the State of

Michigan, a habeas petitioner must present the claim to the Michigan Court of

Appeals and the Michigan Supreme Court. *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). When a habeas petitioner fails to present his claims to the state courts, the ordinary procedure is for the petition to be held in abeyance so that the petitioner may return to the state courts and exhaust his or her appellate remedies. *Rose v. Lundy*, 455 U.S. 509, 515-16, 102 S. Ct. 1198, 1201-02 (1982). However, this procedure requires that an opportunity to litigate the claim in the state courts remains available.

When a habeas petitioner has failed to present his or her claims to the state courts and a state procedural rule precludes the petitioner from pursuing any further judicial review, the petitioner's claims are said to have been procedurally defaulted. In such cases, the petitioner has procedurally defaulted those claims for purposes of federal habeas review because he or she has not, and indeed cannot, meet the exhaustion requirement. *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)). Put differently, "[a] federal court is [] barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver." *Deitz*, 391 F.3d at 808.

Federal courts apply a three-part test to determine if a state prisoner has procedurally defaulted his federal claims in state court. *Willis v. Smith*, 351 F.3d

-12-

741, 744 (6th Cir. 2003).  First, there must be a firmly established, state procedural rule which is applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857-58 (1991).  Second, it must fairly appear that the last state court to which the petitioner sought review relied on the procedural rule as a basis for its decision to refuse to review his or her federal claims.  *Coleman v. Thompson*, 501 U.S. 722, 740, 111 S. Ct. 2546, 2560 (1991).  Third, the procedural default must be an "adequate and independent" state ground on which the state can rely to foreclose review of a federal claim.  *Cnty. Court of Ulster Cnty. v. Allen*, 442 U.S. 140, 148, 99 S. Ct. 2213, 2220 (1979).  If those three prerequisites are met, then the petitioner has procedurally defaulted his or her federal claims in state court, which precludes federal habeas review unless the petitioner shows "that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 90-91, 97 S. Ct. 2497 (1977)); *Deitz*, 391 F.3d at 808 ("In order to gain access to a habeas review of a [claim not adjudicated on the merits due to a state procedural rule], a petitioner must demonstrate either (1) cause to excuse the waiver and prejudice to his defense or (2) actual innocence.") (citing *Murray v.*

-13-

*Carrier*, 477 U.S. 478, 485-92, 106 S. Ct. 2639, 2643-47 (1986)).

For the reasons that follow, Petitioner's failure to present his claims to the state appellate courts, and his inability to point to an objective factor external to the defense to excuse his failure, bar federal habeas review of his claims.

### 2.     *Application*

Petitioner failed to exhaust his constitutional claims because he did not fairly present any of his habeas claims to the Michigan appellate courts before filing his habeas petition.  Thus, the Court must determine whether any opportunities for additional judicial review of Petitioner's claims remain open in the Michigan courts.

Under Michigan law, a criminal defendant has two opportunities to seek state appellate review: one direct appeal and one post-conviction review proceeding. Mich. Ct. R. 6.501 & 7.203.  Petitioner's first opportunity at state review was abandoned when he was found to be incompetent to assist his appointed attorney on appeal.  A few years later, he used his second opportunity when he sought post-conviction relief, which was denied by the trial court in 2005.  Under the rules in effect at that time, Petitioner had twelve months to file an application for leave to appeal with the Michigan Court of Appeals to seek further review and exhaust his state court remedies. Mich. Ct. R. 6.509(A) & 7.205(F)

-14-

(2004). Petitioner did attempt to appeal the decision but because his filing did not comply with the formal requirements set forth in Michigan Court Rules 7.201(B)(3) and 7.216(A)(10), the appeal was dismissed. The dismissal order was without prejudice, but Petitioner never corrected his defective filing. He is now time-barred from doing so.

Any attempt to restart the process and file a second motion for relief from judgment in the trial court would be futile. Under Michigan Court Rule 6.502(G)(1), a criminal defendant is generally permitted to file only one post-conviction motion for relief from judgment. The few exceptions have no application here. *See, e.g.*, *Gadomski v. Renico*, 258 F. App'x 781, 783 (6th Cir. 2007); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 (E.D. Mich. 1999), *aff'd* 8 F. App'x 352 (6th Cir. 2001). Furthermore, Michigan Court Rule 6.508(D)(2) prevents Petitioner from re-raising claims that were raised in a previous post-conviction motion.

Accordingly, Petitioner's unexhausted claims are procedurally defaulted because he has no available procedure remaining in the state courts to satisfy the exhaustion requirement. *See, e.g.*, *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

When a prisoner has defaulted his claims in the state courts, he or she is

-15-

barred from raising the claims on federal habeas review absent a showing of cause and prejudice, or that a fundamental miscarriage of justice would result from a failure to review his claims. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000); *Murray*, 477 U.S. at 485-92, 106 S. Ct. at 2643-47. The Supreme Court has "not identified with precision exactly what constitutes 'cause' to excuse a procedural default." *Edwards*, 529 U.S. at 451, 120 S. Ct. at 1591. Nevertheless, the existence of cause for a procedural default turns on whether the prisoner can show that some objective factor "external to the defense" impeded his or her counsel's efforts to comply with the state's procedural rules. *Murray*, 477 U.S. at 488, 106 S. Ct. at 2645. Without attempting to delineate an exhaustive catalog of objective external impediments to compliance with a procedural rule, the *Murray* Court identified the following circumstances as constituting adequate cause to excuse a procedural default: (1) interference by officials that makes compliance with the state's procedural rule impractical; (2) a showing that the factual or legal basis for the claim was not reasonably available; or (3) the procedural default was the result of ineffective assistance of counsel. *Id.* at 488, 106 S. Ct. at 2645. In *Coleman*, the Court reiterated that unless a petitioner received ineffective assistance of counsel, "'cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be

-16-

attributed to him."  501 U.S. at 753, 111 S. Ct. at 2566.

Here, Petitioner seeks to excuse his procedural default on the same grounds that excused his failure to comply with the statute of limitations and enabled him to obtain equitable tolling: mental incompetence.[4]  Petitioner's claims could not have been raised on appeal, primarily because appellate counsel failed to prosecute the

---

[4] In a previous Opinion and Order, this Court concluded that, pursuant to *Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011), Petitioner's mental condition constituted an "extraordinary circumstance" that excused his failure to comply with AEDPA's statutory limitations period.  This does not mean, however, that Petitioner's incompetence serves to excuse each and every failure to comply with legally-mandated deadlines, particularly deadlines imposed by the state court. Such a distinction makes sense in light of the animating principle of AEDPA, that is, the principle of comity.  As the United States Court of Appeals for the Ninth Circuit remarked in *Schneider v. McDaniel*, 674 F.3d 1144 (9th Cir. 2012):

> The district court's result seems strange at first glance.  One might ask, how is it that Schneider's mental conditions so impeded his ability to file post-conviction petitions as to justify the application of equitable tolling, but did not so impede his ability to file a state post-conviction petition as to demonstrate cause for a procedural default?  But, as the district court recognized, "[t]he standard to determine whether the petitioner has demonstrate cause vis-à-vis the procedural default doctrine is not the same as the standard applied above to determine whether the one-year federal limitation period should be equitably tolled."  Principles of comity require federal courts to respect state procedural bars to postconviction relief.

*Id.* at 1154-55.  As alluded to in the above-quoted language, a second differentiating factor between equitable tolling and cause to excuse a procedural default is that in the latter analysis, the Court must consider whether Petitioner's incompetence was "external to the defense" in the sense that it should be attributed to the state as opposed to Petitioner.

appeal.  Further, the first opportunity Petitioner had to raise his ineffective

assistance of appellate counsel claim was on collateral review in the state court, an

opportunity Petitioner took in his motion for relief from judgment.  When the

motion was denied, Petitioner sought leave to appeal, which was dismissed due to

his failure to comply with the filing requirements set out in the Michigan Court

Rules.  Importantly, this denial was not predicated on Petitioner's failure to satisfy

the cause and prejudice standard employed by the Michigan courts in adjudicating

motions pursuant to Michigan Court Rule 6.508.  The question, then, is whether

Petitioner's incompetence can serve as cause to excuse his failure to exhaust his

ineffective assistance of appellate counsel claim in state court.[5]

The United States Court of Appeals for the Sixth Circuit "has not squarely

considered whether mental illness can constitute cause excusing a procedural

default."  *Clark v. United States*, 764 F.3d 653, 660 n.3 (6th Cir. 2014) (citation

omitted).  *But see Johnson v. Wilson*, 187 F. App'x 455, 458 (6th Cir. 2006)

(unpublished) (holding that a borderline mental impairment, specifically an IQ of

---

[5]  The Court addresses the question of appellate counsel's purported
ineffectiveness when analyzing the merits of Petitioner's claims.  Because the
Court is unable to conclude that the state trial court disregarded or unreasonably
applied Supreme Court precedent in dismissing Petitioner's ineffective assistance
claim, the Court declines to address the relationship between appellate counsel's
alleged ineffectiveness and cause to excuse the state court procedural default.

-18-

74, is not cause for excusing a procedural default).  Recognizing that mental illness and below-average intelligence are not necessarily synonymous with the legal conception of competency, the Court feels constrained by the lack of caselaw on the subject of whether incompetence suffices to establish cause for a habeas petitioner's procedural default.

The majority of federal courts of appeals to have addressed the issue of whether mental illness or below-average intelligence can constitute cause have held that such limitations do not because they are not "external to the defense" as required by *Murray*.  *See, e.g.*, *Schneider v. McDaniel*, 674 F.3d 1144, 1153-55 (9th Cir. 2012) (pro se petitioner's mental condition cannot serve as cause for a procedural default, at least where the petitioner is unable to demonstrate that a mental condition rendered the petitioner completely unable to comply with a state's procedures and he had no assistance); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (borderline IQ of 76 is not external to the defense and does not establish cause); *Hull v. Freeman*, 991 F.2d 86, 91 (3rd Cir. 1993) (petitioner's borderline mental retardation not "cause"); *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (petitioner's below-average intelligence insufficient to establish cause).  The United States Court of Appeals for the Eighth Circuit has, however, carved out an exception: "[I]n order for mental illness to constitute cause

and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief." *Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) (citations omitted).

Assuming that the Sixth Circuit would be willing to entertain the question of whether incompetence can constitute cause (as opposed to a borderline mental impairment), the Court is unable to conclude that Petitioner has made the "conclusive" showing required by *Holt*.[6]  It is true that this Court previously

---

[6] The Court is not ignoring the question of whether Petitioner's incompetence is "external to the defense," but rather, has the following to say. Under the weight of the authorities cited above, a habeas petitioner generally cannot point to his own mental condition to excuse a state court procedural default. Petitioner's mental incompetence is not attributable to him if one conflates the concepts of attribution and fault.  Indeed, it is not Petitioner's "fault" that he is less than entirely mentally healthy.  However, it was at least partially because of the defense (i.e., Petitioner's appellate counsel) that Petitioner's case was dismissed when he attempted to pursue a direct appeal.  The Court uses the word partially because the state court dismissed the appeal even though the motion filed by appellate counsel did not seek such a drastic measure, rather, in the motion, counsel asked that Petitioner be committed to a psychiatric facility in effort to restore his competence or asked for advice on how to proceed with the appeal. This leads the Court to its next point, which is simply that although not required by precedent of which this Court is aware, the state court could have taken additional precautions to ensure fairness in Petitioner's case.  The better practice would have been for the trial court to conduct another competency hearing after Petitioner filed his motion for relief from judgment.  At the time the motion was filed, it was unknown whether Petitioner had the capacity to knowingly initiate and understand

acknowledged that Petitioner is a chronically mentally ill man who demonstrates

paranoid and grandiose delusions, and that there is no evidence that he has

experienced a remission of his mental illness at any time during his imprisonment.

It is also true that Petitioner's last formal adjudication of competency occurred in

2003, when he was deemed incompetent to assist appellate counsel.  Further, a

state court "finding of competence, once made, continues to be presumptively

correct until some good reason to doubt it is presented." *Garrett v. Groose*, 99

F.3d 283, 285 (8th Cir. 1996).  However, Petitioner was able to file a motion for

relief from judgment in the state court.  He was either able to draft and file the

motion without assistance, or her was able to elicit the assistance of another

prisoner.  In either case, he appears to have been capable of complying with - or

seeking help in complying with - the formal filing requirements for initiating post-

conviction review.  Petitioner does not explain why he was able to follow the

requirements for filing in the trial court but not in the Michigan Court of Appeals.[7]

---

the proceeding, or whether another inmate was making decisions for Petitioner.  If
Petitioner was competent when the motion was filed, appointing appellate counsel
would have more approximately returned him to the position he was in when his
direct appeal was dismissed.  It seems unfair that Petitioner–a person whose mental
ability is profoundly compromised–was left to fend for himself at a later date
precisely because he had been incompetent when he initially filed his appeal.

    [7]  To the extent that Petitioner's explanation involves the loss of whatever
assistance he had in prison, the Court notes that he had no constitutional right to

Because Petitioner was able to comply with the filing requirements in the state trial court, the Court is unable to conclude that his incompetence rendered him unable to comply with the requirements on appeal. As such, the Court concludes that Petitioner's incompetence does not serve as cause for his failure to pursue his appeal in accordance with Michigan's procedural rules. *See Schneider*, 674 F.3d at 1153-55 (holding that pro se petitioner's mental condition did not serve as cause for a procedural default where the petitioner was unable to demonstrate that a mental condition rendered him completely unable to comply with a state's procedures and he had no assistance).

Having failed to demonstrate cause and prejudice, Petitioner may nevertheless demonstrate entitlement to review if he can show that a fundamental miscarriage of justice occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 479-80, 106 S. Ct. 2639, 2641. To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 865 (1995).

---

any assistance in filing a state post-conviction proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987).

Petitioner has made no such showing, and he recently withdrew his discovery

motion seeking an order compelling the Detroit Police Department to produce and

test physical evidence to show that he is actually innocent.  The withdrawal of this

motion, the complete dearth of new evidence presented to the Court, and

Petitioner's sworn statements during his plea colloquy all point to the

inappropriateness of excusing the procedural default based on actual innocence.

　　　While the Court is troubled by the procedural occurrences in Petitioner's

state court proceedings, the law in the Sixth Circuit leads this Court to conclude

that Petitioner's claims are barred from review by his state court procedural

default, that Petitioner has failed to demonstrate that an objective factor external to

the defense constitutes cause to excuse his default, or that a fundamental

miscarriage of justice would result from a failure to review his claims.

## B.   Merits Analysis

　　　Even assuming that Petitioner's claims were not procedurally defaulted, he

has not demonstrated entitlement to habeas relief on the merits of the claims set

forth in his habeas application.

### 1.　　Governing Legal Standard

Review of this case is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214.  In order to

grant relief, this Court must conclude that the state court's decision "with respect to any claim that was adjudicated on the merits in State court proceedings" was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[]" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has expounded upon the meanings of the two clauses contained in 28 U.S.C. § 2254(d)(1).  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495, 1519 (2000) (O'Connor, J., opinion of the Court for Part II) ("[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning.").  "A state-court decision is contrary to clearly established federal law if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent."  *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009) (alterations in original) (internal quotation marks omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. at 1519).

Alternatively, "[i]f the state court identifies the correct governing legal principle . . . , habeas relief is available under the unreasonable application clause

if the state court unreasonably applies that principle to the facts of the prisoner's case or unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Akins v. Easterling*, 648 F.3d 380, 385 (6th Cir. 2011) (internal quotation marks and alterations omitted).  A federal court may not find a state court's application of Supreme Court precedent unreasonable if it is merely "incorrect or erroneous.  [Rather, t]he state court's application must have been 'objectively unreasonable.'" *See, e.g.*, *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 2535 (2003) (citations omitted).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522.  "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

Factual determinations made by state court judges in the adjudication of claims cognizable on habeas review are accorded a presumption of correctness.  28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Id.*  Moreover, habeas review of claims adjudicated

on the merits is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. __, 131 S. Ct. 1388, 1398 (2011).

As the authority cited above makes clear, AEDPA"imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 1862 (2010) (citing cases); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007).

In this case, Petitioner first raised his habeas claims on collateral review. The state trial court denied Petitioner's motion for relief from judgment *in toto*, addressing and rejecting each of the following claims on the merits using a de novo standard of review: (1) Petitioner was denied his right to appellate review; (2) Petitioner was incompetent to enter a plea of nolo contendere; (3) Petitioner should have been permitted to withdraw his plea because of appellate counsel's ineffectiveness; (4) Petitioner was actually innocent because his incompetence precluded him from understanding the mens rea element of the crime of conviction; and (5) Petitioner's sentence was excessive because the trial court departed from the guidelines without articulating the reasons for doing so. Petitioner attempted to appeal this decision, but the appeal was dismissed due to Petitioner's failure to comply with the filing requirements set forth in  Michigan

Court Rules 7.201(B)(3) and 7.216(A)(10) and Petitioner never corrected the deficiency. Having reviewed the matter, and for the reasons that follow, the Court concludes that the state court's denial of relief was neither contrary to Supreme Court precedent nor an unreasonable application of federal law.

### 2.    *Validity of Plea*

In his first ground for relief, Petitioner challenges the validity of his plea of nolo contendere, asserting that his plea was involuntarily entered because his attorney forced him to sign the plea agreement and because the agreement was breached.[8, 9]

---

[8] It appears that Petitioner erroneously believes that he was convicted on both the criminal sexual conduct and home invasion charges and sentenced as a second habitual offender. To the extent Petitioner complains that the trial court imposed an unidentified sentencing departure above the applicable guideline range therefore depriving him of the benefit of his bargain, the Court addresses the sentencing claim, *infra*.

[9] The Court notes that although Petitioner challenged the validity of his plea in his motion for relief from judgment in the state trial court, his challenge did not involve the voluntariness of his plea, but rather whether it was knowingly and intelligently made due to his mental incompetence. The state trial court rejected this claim on the merits in denying Petitioner's motion for relief from judgment, noting that nothing in the plea colloquy suggested that Petitioner failed to understand the consequences of entering a plea of no contest. Petitioner responded to the trial court's questions in a lucid fashion and there is nothing in the record to suggest that Petitioner failed to comprehend the proceeding.

Because guilty pleas operate as a waiver of constitutionally-protected rights,[10] in order to comport with the Constitution, pleas must be made "voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'"  *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S. Ct. 2398, 2405 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970)); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712 (1969).  "The identical standard applies to a plea of no contest or *nolo contendere*."  *Spikes v. Mackie*, 541 F. App'x 637, 645 (6th Cir. 2013) (unpublished) (citing *Fautenberry v. Mitchell*, 515 F.2d 614, 636-37 (6th Cir. 2008)).

For a guilty or no contest plea to be voluntary, the defendant must be "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel[.]"  *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472 (citation omitted).  Further, the plea must not have been "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . promises that are by their nature improper as having no proper relationship to the

---

[10]  "A defendant who enters [a guilty or no contest plea] simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969).

prosecutor's business (*e.g.*[,] bribes)." *Id.* (citation omitted).  A criminal defendant

must also be aware of the maximum sentence that can be imposed for the crime to

which he is pleading.  *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994).  The

voluntariness of a guilty or no contest plea is determined in light of all relevant

circumstances surrounding the plea.  *Brady*, 397 U.S. at 749, 90 S. Ct. at 1469

(citations omitted).

A guilty or no contest plea is intelligent and knowing where there is nothing

to indicate that the defendant is incompetent or otherwise not in control of his or

her mental faculties, is aware of the nature of the charges, and is advised by

competent counsel.  *Id.* at 756, 90 S. Ct. at 1473.

On direct review, the state possesses the burden of showing that a plea was

voluntary and intelligently made.  *See generally Boykin*, 395 U.S. 238, 89 S. Ct.

1709.  "When a defendant subsequently brings a federal habeas petition

challenging his plea, the state generally satisfies its burden by producing a

transcript of the state court proceeding."  *Garcia v. Johnson*, 991 F.2d 324, 326

(6th Cir. 1993).  Thus, if the state presents a plea-proceeding transcript that

suggests the plea was both voluntary and knowing, a habeas petitioner seeking to

challenge the plea on constitutional grounds bears a "heavy burden[.]"  *Id.* at 328.

This is because a state court's factual findings regarding the propriety of a plea are

entitled to a presumption of correctness on habeas review.  28 U.S.C. § 2254(e)(1)

(providing that state court determinations of factual issues are presumed correct

unless the habeas petitioner rebuts the presumption by "clear and convincing

evidence"); *Thompson v. Keohane*, 516 U.S. 99, 108-11, 116 S. Ct. 457, 463-64

(1995) ("A state-court determination of competence is a factual finding, to which

deference must be paid.").  Thus, in a sense, "a presumption of correctness attaches

. . . to the judgment itself." *Spikes*, 541 F. App'x at 645-46 (citation omitted).

Conversely, if "the transcript is inadequate to show that a plea was voluntary and

intelligent, the presumption of correctness no longer applies." *Garcia*, 991 F.2d at

327.

  The plea transcript establishes that Petitioner freely and voluntarily pled no

contest to the charges.  Petitioner was advised of the maximum penalties for the

charges and the rights that he would be waiving by pleading guilty.  Petitioner was

advised of the terms of the plea agreement and acknowledged that it included the

complete terms of the agreement.  In response to the trial court's questions,

Petitioner denied that any promises (other than those contained in the plea

agreement) or threats had been made to induce him into pleading guilty.  At the

beginning of the hearing, Petitioner indicated that his attorney hoped to be able to

have Petitioner placed in the Forensic Center or "maybe some institution I could

get some medicines as well." (Plea Hrg. Tr., ECF No. 11-3.) In doing so, he candidly admitted his guilt. (*Id.*) In contrast to his statements during his sentencing hearing, Petitioner's statements during the plea colloquy were responsive and appropriate.

Petitioner's bare claim that he was coerced or forced into pleading guilty "is insufficient to overcome the presumption of verity which attaches to petitioner's statements during the plea colloquy, in which he denied that any . . . threats had been used to get him to enter his plea." *Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 750-51 (E.D. Mich. 2005); *United States v. Ford*, 15 F. App'x. 303, 309 (6th Cir. 2001).

While not explicitly raised in his petition, the Court shall briefly address the knowing and intelligent nature of Petitioner's plea (the claim the state trial court denied on the merits). The trial court held a competency hearing on March 16, 2001, after Petitioner had been evaluated and deemed competent by the evaluator. Based on the reports and testimony offered at that hearing, the trial court found Petitioner competent to stand trial. Petitioner pled no contest two months later. Petitioner has not offered clear and convincing evidence that he was incompetent to plead no contest in 2001. As indicated above, nothing occurred at the plea hearing itself that would have raised any questions of Petitioner's competence at

-31-

the time of the plea hearing.  Moreover, the evidence offered at the hearing in this

Court concerned Petitioner's competence over a lengthy period of time, and no

opinion was given as to Petitioner's competency at the time of his plea.

Petitioner claims that the terms of the plea agreement were breached.  There

is, however, nothing in the record to support such an assertion.  Indeed, it appears

that Petitioner received the benefit of his bargain.

For the reasons set forth above, the trial court's decision that Petitioner's

plea was valid did not result in a decision that was contrary to, or involve an

unreasonable application of, clearly established law.  Thus, to the extent that

Petitioner argues that the state court erred in denying his request to withdraw his

plea, the claim lacks merit.  The United States Constitution does not afford

criminal defendants an absolute right to withdraw a guilty plea.  *Shanks v.*

*Wolfenbarger*, 387 F. Supp. 2d 740, 745, 748 (E.D. Mich. 2005) (internal citations

omitted).  Therefore, unless a plea violates a clearly-established constitutional

right, state courts have discretion regarding whether or not to permit a defendant to

withdraw a plea.  *Adams v. Burt*, 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007)

("[T]he decision to permit a defendant to withdraw a plea invokes the trial court's

discretion.  A trial court's abuse of discretion generally is not a basis for habeas

corpus relief.") (internal citations omitted); *Hoffman v. Jones*, 159 F. Supp. 2d 648,

655 (E.D. Mich. 2001).[11]

### 3. *Denial of State Post-Conviction Relief*

Petitioner's second claim asserts that he was erroneously denied post-conviction relief in the state courts. From his brief pro se petition it is difficult to discern which post-conviction proceeding this claim refers to and Petitioner's appointed habeas counsel chose not to address this claim in the reply brief. Petitioner asserts that he filed his first motion for relief from judgment in 2010 and that it was denied. As support for this claim, Petitioner explains that the clerk of the court lied and said that he had previously been denied the relief sought in 2005 and in 2006. Curiously, the state court record belies Petitioner's assertions, as the record contains a motion for relief from judgment in 2005, not 2010. The motion filed in 2010 dealt with Petitioner's request for DNA evidence.

Irrespective of the factual infirmities asserted in the petition, Petitioner is not entitled to relief on this claim. A state court judge reviewed the claims asserted in Petitioner's motion for relief from judgment de novo and Petitioner failed to perfect his appeal, resulting in the state appellate court's dismissal of the appeal.

---

[11] To the extent Petitioner's claim rests on a belief that the trial court abused its discretion in denying his motion to withdraw his plea, the Court notes that such a claim is not cognizable on habeas review because it is a state law claim and federal habeas courts have no authority to correct perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-58, 112 S. Ct. 475, 480 (1991); *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993).

Petitioner twice sought discovery for DNA evidence, and was twice rejected: once because he did not meet the statutory requirements and once because he had no further avenues to seek appellate review.  Further, there is "no federal constitutional requirement [that a state] provide a means of post-conviction review of state convictions, [so] an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Williams-Bey v. Trickey*, 894 F. 2d 314, 317 (8th Cir. 1990); *see also Kirby v. Dutton*, 794 F. 2d 245, 247-48 (6th Cir. 1986) (defendant's claims that he was denied the effective assistance of counsel, due process, and equal protection in state's post-conviction proceedings were unrelated to his detention and could not be brought in a federal habeas corpus petition). Accordingly, in addition to being factually frivolous, Petitioner's second ground for relief is not cognizable on federal habeas review.

### 4.    *Loss of Direct Appeal*

In his third claim for relief, Petitioner argues that he was deprived of his due process right to a direct appeal because of his incompetence.  This claim fails because there is no clearly established Supreme Court precedent setting forth constitutional requirements for states to follow when an incompetent prisoner attempts to file a direct appeal from his plea-based conviction or seeks to withdraw a plea.

-34-

As a starting point, it must be recalled that Supreme Court precedent imposes no obligation at all on a state to provide the right to a direct appeal from a judgment of conviction, *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983), or the right to collateral review of that judgment once it is final, *Pennsylvania v. Finley*, 481 U.S. 551, 556-57, 107 S. Ct. 1190, 1993 (1987). The only constitutional requirement is a conditional one: if a state provides a right of appeal, then it must also provide the defendant with effective assistance of counsel for his direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830 (1985). There is no prohibition in clearly established Supreme Court law against dismissing an appeal on the grounds that the defendant is incompetent to assist counsel. In fact, one could argue that such a dismissal logically flows from the fact that a defendant has the right to effective assistance of counsel during on an appeal as of right.

Established Supreme Court law on the issue of a criminal defendant's competency concerns the prohibition against trying incompetent defendants or accepting their guilty pleas. Under established Supreme Court precedent, a criminal defendant may not be tried unless he is competent, *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 838 (1966), and he may not waive his right to counsel or plead guilty unless he does so "competently and intelligently[,]" *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S. Ct. 1019, 1024 (1938); *accord Brady v. United*

-35-

*States*, 397 U.S. 742, 758, 90 S. Ct. 1463, 1474 (1970).  There is no Supreme Court

law, and Petitioner offers none, setting forth constitutional rules obligating a state

to recognize a renewed direct appeal after an initial one is dismissed due to a

defendant's incompetence.  The procedure followed by the state courts here,

therefore, did not offend any clearly established constitutional rules.

     Citing state law, the court decided that Petitioner's direct appeal should be

dismissed until he regained his competency.  There was good reason for that.

When an appellate attorney is representing an incompetent prisoner who is

appealing a plea-based conviction, it is impossible for him to determine whether

his client is capable of understanding the potential consequences of a successful

appeal.  For example, had Petitioner succeeded in invalidating his plea, his case

would have returned to the trial court on the original charges and he would have

faced increased penalties if found guilty on the reinstated counts.

     The state court went on to rule that when Petitioner regained his

competence, he could renew his appeal by filing a motion for relief from judgment.

Petitioner did just that and his claims were rejected on the merits by the trial court.

It should be noted that this procedure resulted in his direct appeal essentially being

tabled in exchange for a future post-conviction review proceeding, which, as the

Sixth Circuit has stated are "too unlike an appeal of right to constitute a sufficient

substitute[]" to a direct appeal.  *Hardaway v. Robinson*, 655 F.3d 445, 449 (6th Cir. 2011).[12]  Nevertheless, Petitioner has not cited any Supreme Court authority, and this Court cannot locate any, that clearly establishes the right to a renewed direct appeal with all of its attendant rights in these circumstances.  Accordingly, the Court is forced to conclude that Petitioner has not demonstrated an entitlement to habeas relief under 28 U.S.C. § 2254(d).

With respect to Petitioner's claim that his appellate counsel was ineffective for causing the abandonment of his appeal, the argument fails for the reason that there is no directly controlling Supreme Court precedent to provide guidance to lawyers who represent incompetent criminal defendants who wish to withdraw a plea agreement despite not having sufficient justification for wanting to withdraw the plea and despite the defendant's inability to grasp the consequences of withdrawing a plea due to his or her own incompetence.

The starting point for analyzing Petitioner's ineffective assistance of counsel claim based on his appellate counsel's conduct is *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029 (2000), a case in which the Supreme Court addressed "the proper framework for evaluating an ineffective assistance of counsel claim[] based on counsel's failure to file a notice of appeal without respondent's consent." *Id.* at

---

[12] *Hardaway* employed this language in discussing an ineffective assistance of counsel claim.

-37-

473, 120 S. Ct. at 1033.  Flores-Ortega was charged in the State of California with second-degree murder, two counts of assault, and a sentencing enhancement allegation that he used a deadly weapon in committing those crimes.  He later pled guilty to the second-degree murder charge in exchange for the prosecution's agreement to drop the other charges.[13]  During his sentencing hearing, the judge informed Flores-Ortega that he could file an appeal within sixty days.  His attorney "wrote 'bring appeal papers' in her file," however, "no notice of appeal was filed within the 60 days allowed by state law."  *Id.* at 474, 120 S. Ct. at 1033. Approximately four months after the imposition of Flores-Ortega's sentence, Flores-Ortega tried to file a notice of appeal, which was rejected as untimely.  He then sought state post-conviction relief challenging the validity of his plea and conviction, and arguing that his counsel had not filed a notice of appeal as promised.  His "efforts were uniformly unsuccessful."  *Id.*

Flores-Ortega then filed a federal habeas petition pursuant to 28 U.S.C. § 2254, claiming that his counsel was ineffective due to her failure to file a notice of appeal on his behalf after promising him that she would do so.  The case eventually reached the Supreme Court, where the Court first held that the Sixth Amendment

---

[13] As the Court noted, Flores-Ortega entered a plea "pursuant to a California rule permitting a defendant both to deny committing a crime and to admit that there is sufficient evidence to convict him."  *Flores-Ortega*, 528 U.S. at 473, 120 S. Ct. at 1033 (citation omitted).

-38-

right to "reasonably effective" legal assistance articulated in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) applies to claims "that counsel

was constitutionally ineffective for failing to file a notice of appeal."[14]  *Flores-*

*Ortega*, 528 U.S. at 477, 120 S. Ct. at 1034.  Reemphasizing the context specific

inquiry applied to ineffective assistance claims under *Strickland*, the Court stated:

> As we have previously noted, "no particular set of detailed rules for
> counsel's conduct can satisfactorily take account of the variety of
> circumstances faced by defense counsel." [] Rather, courts "must judge
> the reasonableness of counsel's conduct on the facts of the particular case,
> viewed as of the time of counsel's conduct" . . . and "judicial scrutiny of
> counsel's performance must be highly deferential[.]"

*Id.* at 477, 120 S. Ct. at 1034-35 (quoting *Strickland*).  Acknowledging its own

precedent standing for the proposition that "a lawyer who disregards specific

instructions from the defendant to file a notice of appeal acts in a manner that is

professionally unreasonable[,]" *id*. at 477, 120 S. Ct. at 1035, the Court then

addressed the situation at hand: "Is counsel deficient for not filing a notice of

appeal when the defendant has not clearly conveyed his wishes one way or the

other?"  *Id.*

In such situations, the Court held, a court evaluating an ineffective assistance

claim must ask an "antecedent" question, that is, "whether counsel in fact

---

[14]  To prevail on an ineffective assistance of counsel claim, a criminal
defendant must satisfy the now familiar two-part performance and prejudice
framework of *Strickland*.

consulted with the defendant about an appeal." *Id.* at 478, 120 S. Ct. at 1035.  The

term "consult" was used to mean "advising the defendant about the advantages and

disadvantages of taking an appeal, and making a reasonable effort to discover the

defendant's wishes." *Id.*  If an attorney consults with his or her client and fails to

abide by the defendant's express instructions with respect to an appeal, then

counsel acts in a manner that is professionally unreasonable, which constitutes

deficient performance. *Id.*  However, if the attorney does not engage in

consultation, the question becomes whether the failure to do so itself constitutes

deficient performance. *Id.*  Although the Court declined to adopt a *per se* rule

mandating that attorneys always consult with their clients about their appellate

rights, the Court did note that such a consultation would usually be required. *Id.* at

479, 120 S. Ct. at 1035.  Ultimately, the Court held as follows:

> [C]ounsel has a constitutionally-imposed duty to consult with the
> defendant about an appeal when there is reason to think either (1) that a
> rational defendant would want to appeal (for example, because there are
> nonfrivolous grounds for appeal), or (2) that this particular defendant
> reasonably demonstrated to counsel that he was interested in appealing.
> In making this determination, courts must take into account all the
> information counsel knew or should have known. . . .

*Id.* at 480, 120 S. Ct. at 1036.  The Court went on to explain that a relevant, but not

determinative inquiry, is whether the conviction was rendered after a trial or by

way of a plea agreement. *Id.*  In the plea agreement context, courts should consider

-40-

"such factors as whether defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.* As a final note on *Strickland*'s deficient performance prong, the Court cautioned that "[o]nly by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *Id.*

Turning to the prejudice prong of ineffective assistance claims, the Court held that in cases where a criminal defendant is "denied the assistance of counsel altogether[,]" such as a case where counsel's allegedly deficient performance led "to the forfeiture of a proceeding [(i.e., an appeal)] altogether[,]" a defendant must "demonstrate that, but for counsel's deficient performance, he would have appealed[.]" *Id.* at 483-84, 120 S. Ct. at 1038. In short, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484, 120 S. Ct. at 1039.

At first blush, *Flores-Ortega* seems to dictate the outcome of Petitioner's ineffective assistance claim. Upon closer examination, however, there are material

differences between *Flores-Ortega* and the instant case.  Most obviously, an appeal was filed in the instant case, as evidenced by the appointment of appellate counsel and the court's dismissal of Petitioner's appeal on the basis of Petitioner's incompetence.  Although Petitioner made it clear to his appellate attorney that he wished to withdraw his guilty plea - which would trigger the rule set forth in *Flores-Ortega* regarding appellate counsel's duty to pursue that appeal - counsel met with Petitioner and

> tried to discuss with [Petitioner] the Appellate process and explain to [Petitioner] the consequences of moving forward with [an] appeal. Specifically, the likelihood of conviction on all counts and the sentence enhancement if he proceeded to trial as well as the fact that the sentence(s) imposed following conviction at trial would very likely be greater than the sentence [Petitioner] is presently serving.

(Mot. to Have Appellant Evaluated, ECF No. 11-9 Pg ID 243.)  The motion noted that the "overall tenor of [Petitioner's] communications and train of thought during the course of said interview" caused counsel "to question [his] competency and ability to understand the nature of the consequences associated with going forward on the appeal of this matter by moving to withdraw his plea[.]"  (*Id.*)

In appellate counsel's memorandum of law filed in conjunction with the motion to have Petitioner evaluated, counsel cited state court authority standing for the proposition that "it is best that an appeal proceed regardless of a defendant's

-42-

competency.  If such an appeal is unsuccessful and a defendant subsequently

regains his competency and discovers additional issues which should have been

raised previously and were not, that defendant may, of course, file an application

for delayed appeal asking this Court to consider those additional issues." (*Id.* at Pg

ID 245 (citing *People v. Newton*, 152 Mich. App. 630, 636, 394 N.W.2d 463, 466

(Mich. Ct. App. 1986) (per curiam)).)  However, counsel distinguished *Newton*

from Petitioner's case on the basis that *Newton* involved a trial and reversal of the

convictions would mean only that Newton would be retried on the same charges

involved in his first trial whereas, in Petitioner's case, withdrawing the nolo

contendere plea would subject Petitioner to conviction on multiple charges and

expose him to the risk of serving a much lengthier term of incarceration.  Further,

appellate counsel argued that because one must knowingly and intelligently waive

his or her constitutional rights, the same standard of understanding should be

required to seek to withdraw a previously entered plea.

Once Petitioner was evaluated by Dr. Balay in January of 2003, she issued a

report in which she expressed concerns similar to those made by appellate counsel.

In this report, Dr. Balay indicated that Petitioner's appellate counsel reached out to

her and "expressed concern that his client wanted to withdraw his guilty plea.  He

said his concern came out of the fact that his client did not seem to have any

rational explanation for this and, indeed, seemed to be actively mentally ill during

the time [appellate counsel met with Petitioner]." (Dr. Balay Report, ECF No. 11-

9 Pg ID 354-55.) During her meeting with Petitioner, Dr. Balay inquired why he

wanted to withdraw his plea and

> he said he wanted to do it because he had been sentenced to "too many
> years." He said that the day before his trial his attorney had told him to
> accept this plea bargain. He said he was told that the Home Invasion and
> the Habitual Offender charges would be dropped. Mr. Peterson was of
> the opinion that he had been forced to sign a paper for a plea
> arrangement and later learned that those charges had not been dropped.
> I was unable to convince him otherwise, as I described to him the
> information in the pre-sentence report. He said he felt forced into this
> plea bargain. I asked him specifically why he did not want to do the plea
> bargain. Unfortunately, he was unable to give me any coherent response
> to this question. It was an irrelevant and confusing response. He started
> rambling about how when he was living in Lafayette Towers there was
> a big storm, something about something happening at the railroad tracks,
> something about waiting for Ronald Reagan to "be deceased," and
> something about his being controlled from the "electrical sewer." . . . As
> noted, he was convinced he had been convicted on all three charges. He
> seemed to think that he had somehow been betrayed in court. He
> repeatedly said that he clearly heard the judge sentence him to "400
> months," which should be about 35 years. When it was pointed out to
> him that his actual sentence had a minimum time considerably less than
> that, he seemed unable to see the logic of this. . . .

(*Id.* at Pg ID 355-56.) Dr. Balay indicated that Petitioner's "reasons for wanting to

withdraw his guilty plea appear to be completely irrational and dominated by his

psychotic thinking." (*Id.* at Pg ID 356.)

Reviewing this record, this Court is unable to conclude that Petitioner's

appellate counsel performed deficiently when he sought to have Petitioner

committed for psychiatric treatment or, in the alternative, sought advice from the

state court on how to proceed with Petitioner's appeal.  While the state court record

is silent on whether the court provided counsel with any advice, the state court did

issue an order dismissing Petitioner's appeal.  (4/1/03 Order, ECF No. 11-9 Pg ID

359.)  The state court record is similarly silent with respect to how counsel reacted

to this order of dismissal.  However, given the fact-intensive inquiry applied to

*Strickland* claims, and the *Flores-Ortega* Court's reminder that courts consider "all

relevant factors in a given case[,]" 528 U.S. at 480, 120 S. Ct. at 1036, this Court is

hard-pressed to conclude that the state court erroneously or unreasonably applied

binding Supreme Court precedent in rejecting Petitioner's ineffective assistance

claim.  This is particularly true in light of the fact that Petitioner received a

sentence within the bargained for range and the fact that in accepting the plea,

Petitioner waived some of his appellate rights (i.e., he waived his right to a direct

appeal as of right).  *Id.* (indicating that courts examining ineffective assistance

claims based on appellate counsel's failure to file a notice of appeal should

consider "such factors as whether defendant received the sentence bargained for as

part of the plea and whether the plea expressly reserved or waived some or all

appeal rights[]").

In short, the Court's conclusion that Petitioner's counsel did not act unreasonably or deficiently is evidenced by counsel's expressed concern - which was echoed by Dr. Balay - that Petitioner failed to understand the consequences of withdrawing his previously entered nolo contendere plea and that he was unable to appreciate that he was sentenced in accordance with the terms of the plea agreement. It must be remembered "that the Federal Constitution imposes one general requirement [on counsel]: that counsel make objectively reasonable choices." *Id.* at 479, 120 S. Ct. at 1036 (citation omitted). Counsel was not ineffective for refraining from forging ahead with an appeal, when his client was incompetent and appeared unable to appreciate that a successful appeal would be a pyrrhic victory if he was later found guilty.[15] Petitioner was not denied the

---

[15] Although not required to address the prejudice prong given its finding that counsel did not render deficient performance, the Court notes that *Flores-Ortega*'s prejudice test does not neatly fit the circumstances of the present case, primarily because an appeal was filed. The case is also distinguishable on the basis that, in the State of Michigan, a criminal defendant convicted pursuant to a plea agreement has more limited appellate rights than a defendant convicted after a trial on the merits. Unlike a defendant convicted by a jury (or judge), a defendant who pleads guilty or nolo contendere does not have an automatic right to a direct appeal; rather, "any appeal from [a] conviction and sentence pursuant to [a] plea will be by application for leave to appeal and not by right." Mich. Ct. R. 6.302(B)(5). This distinction is important because *Flores-Ortega* held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." 528 U.S. at 484, 120 S. Ct. at 1039. Unlike those cases where a defendant has an appeal as of right, Petitioner only had a right to file an application for leave to appeal, which undercuts the

-46-

effective assistance of appellate counsel during his aborted appeal and the state

court adjudication of this claim was reasonable given the requirements of clearly

established Supreme Court precedent.

### 5.    Sentencing Guidelines

Petitioner's fourth and final claim for relief challenges his sentence on the

grounds that the trial court improperly calculated his sentence under the Michigan

Sentencing Guidelines.  Federal habeas review "is limited to deciding whether a

conviction violated the Constitution, laws, or treaties of the United States."  *Bey v.*

*Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (internal quotation marks omitted); 28

U.S.C. §§ 2241(c)(3), 2254(a); *cf. Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct.

475, 480 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state

law.").  As a result, an error in the application of state law, such as a state court's

sentencing guidelines, will be reviewed "only if it were so fundamentally unfair as

to violate the petitioner's due process rights."  *Coleman v. Mitchell*, 244 F.3d 533,

542 (6th Cir. 2001).  To the extent Petitioner asserts that his sentence was

---

propriety of presuming prejudice in this case.  While it is conceivable that
prejudice resulted from counsel's decision to seek guidance instead of prosecuting
Petitioner's appeal (by seeking leave to appeal with the state appellate court),
particularly given the Sixth Circuit's recognition that "Michigan's collateral post-
conviction proceeding[s] [are] too unlike an appeal of right to constitute a
sufficient substitute[,]" *Hardaway*, 655 F.3d at 449, the fact is that in this case, the
trial court denied the motion to withdraw, which is a decision traditionally
committed to the discretion of the trial court.

-47-

improperly calculated under state law, his claim is not cognizable on federal habeas review.   Further, he has not alleged or shown that the scoring of the offense variables was so unfair as to violate his due process rights, and he has not endeavored to make a factual showing that the state court relied on inaccurate information during sentencing.   Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability.   28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).   A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604 (2000)).   When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would

find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604. When, as here, the merits of a habeas petition are addressed despite an actual or potential procedural deficiency, a habeas petitioner seeking a certificate of appealability "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

Having considered the matter, the Court concludes that reasonable jurists could debate the correctness of the Court's procedural ruling that Petitioner procedurally defaulted his claims and that he has not adequately demonstrated cause to excuse the default. The Court also concludes that reasonable jurists could debate the propriety of this Court's resolution of Petitioner's claim that he was denied his right to a direct appeal by virtue of the state court's actions or that of his appellate counsel. Accordingly, a certificate of appealability shall issue on the issues of (1) whether Petitioner has demonstrated cause to excuse the procedural default of his constitutional claims and (2) whether Petitioner's constitutional due process or Sixth Amendment rights were violated when his appeal was dismissed by the state court. Further, because Petitioner was permitted to proceed *in forma pauperis* in this Court, Petitioner may proceed *in forma pauperis* without further

-49-

authorization on appeal should he choose to pursue one.  Fed. R. App. P. 24(a)(3).

## IV.   CONCLUSION AND ORDER

The Court concludes that review of Petitioner's claims is barred because Petitioner has not demonstrated cause to excuse his state court procedural default of failing to file his state post-conviction appeal in conformity with state procedural rules.  In the alternative, and turning to the merits of Petitioner's claims, the Court concludes that the trial court's adjudication of Petitioner's claims during his state post-conviction review proceeding was not contrary to, nor did it involve an unreasonable application of, clearly established Supreme Court precedent. Because Petitioner has failed to demonstrate that he is being held in violation of his constitutional rights, he is not entitled to the issuance of the writ of habeas corpus.

Accordingly,

**IT IS ORDERED** that Petitioner's petition seeking the issuance of the writ of habeas corpus is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability **SHALL ISSUE** on the issues identified in Section IV of this Opinion and Order and the Court **GRANTS** Petitioner permission to proceed *in forma pauperis* on appeal;

**IT IS FURTHER ORDERED** that Petitioner's request for personal bond

on decision is **DENIED AS MOOT**.


Dated: July 15, 2015                          s/PATRICK J. DUGGAN
                                              UNITED STATES DISTRICT JUDGE

Copies to:

**Andrew N. Wise, FDO**
**Anica Letica, AAG**
**Cheri L. Bruinsma, AAG**
**Mark G. Sands, AAG**
**Raina I. Korbakis, AAG**